UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JULIE SOURS and JOHN RITCHIE, individually and on behalf of the wrongful death beneficiaries of MARK W. RITCHIE, deceased                                PLAINTIFFS

V.                                                CIVIL ACTION NO. 3:19-CV-473-KHJ-FKB

ADAM N. YAMOUT, D.O.                                                DEFENDANT

ORDER

Before the Court are Defendant Dr. Adam N. Yamout, D.O.'s Motion in Limine to Strike and/or Exclude the Proposed Testimony of Dr. David Messerly [172], Motion in Limine to Exclude Certain Expert Testimony [174], and Motion for Partial Summary Judgment [170]. For the following reasons, the Court denies these motions.

I.  Facts and Procedural History

This case arises from the death of Mark W. Ritchie. These facts are largely undisputed. Forty-nine-year-old Ritchie was involved in a motorcycle accident on June 28, 2017. Defendants' Summary of Relevant Medical Treatment [170-1] at 1; Plaintiffs' Summary of Relevant Medical Treatment [181-1] at 12. As a result, he was admitted to the emergency department at Anderson Regional Medical Center. [170-1] at 1; [181-1] at 12. There, Ritchie was diagnosed with a right ankle open medial talus fracture, dislocation of the right ankle, and ankle laceration. [170-1] at 1; [181-1] at 12. Ritchie was then admitted to Anderson hospital. [170-1] at 1; [181-

1] at 12. Orthopedic surgeon Dr. James Green, Jr., M.D. performed surgery on Ritchie to treat his injuries. [170-1] at 1; [181-1] at 12. Ritchie was discharged on July 1, 2017. [170-1] at 1; [181-1] at 12.

Nine days later, Ritchie attended a follow-up appointment with Dr. Green. Medical Records [122-4] at 4. Dr. Green said that Ritchie's surgical wounds "looked good" and removed his staples. *Id.* Dr. Green noted "serous drainage . . . from the plantar heel laceration" and that Ritchie developed "a sizeable fracture blister along the posteromedial calf." *Id.* Dr. Green dressed the blister with sterile adhesive bandage. *Id.* Ritchie explained that he had been feeling weak and had a sore throat. *Id.* Dr. Green referred Ritchie to the walk-in medical clinic for "his pulmonary upper respiratory" problems. *Id.*

The walk-in clinic immediately referred Ritchie to the Anderson emergency room, where he complained mainly of shortness of breath. *Id.* at 5–6. His brother also reported that Ritchie was suffering from cold chills, diaphoresis, neck pain, back pain around his kidneys, nausea, and was pale. *Id.* at 6. Ritchie then was admitted to Anderson hospital, and during his diagnostic exams, there was a "gross elevation in his white blood cell count" that suggested infection. *Id.* at 11–12.

As Ritchie's condition worsened, the hospital transferred him to the intensive care unit (ICU). *Id.* at 16. Dr. Yamout assumed primary care of Ritchie. Dr. Yamout Depo. [181-8] at 84–85. Ritchie's health continued to deteriorate, so he consented to intubation at about 10:15 p.m. [122-4] at 17. The exact time of the first intubation attempt is unknown.

During Dr. Yamout's first attempt to intubate Ritchie, he intubated the esophagus. *Id.* at 29. He tried to intubate twice more but both attempts failed. *Id.* Dr. Yamout noted that "[a]nasthesia and the ER physician were called immediately." *Id.* The anesthesiologist could not intubate Ritchie either. *Id.* "[T]hus, an emergent cricothyroidotomy[, an incision made to establish an airway in life-threatening situations,] was performed at the bedside successfully." *Id.* "Unfortunately just prior to this[, Ritchie] lost his pulse." *Id.* At 11:00 p.m., Ritchie lost his pulse (or, "coded") for about 18 minutes before he was resuscitated. *Id.* Ritchie coded again at 2:52 a.m., with resuscitation at 2:57 a.m., and coded again at 3:48 a.m. with resuscitation at 3:56 a.m. *Id.*

After Ritchie's family was informed of his poor prognosis, they requested no further resuscitation. *Id.* at 31. The medical records list his cause of death as sepsis syndrome. *Id.*

Plaintiffs Julie Sours and John Ritchie sued for Ritchie's wrongful death, asserting medical negligence claims. Amend. Compl. [3] at 5. The only remaining Defendant is Dr. Yamout who now moves to exclude Plaintiffs' expert testimony and for partial summary judgment. The Court addresses each motion in turn.

II. Motions in Limine

A. Standard

The purpose of a motion in limine is to prevent opposing counsel from "mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by

the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *Parker v. Tyson Foods, Inc.*, 499 F. Supp. 3d 297, 299 (S.D. Miss. 2020) (quoting *O'Rear v. Fruehauf Corp.* 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)). Though the granting of a motion in limine "does not preclude the party sponsoring the evidence from revisiting the issue at trial," the issue must be raised "outside the jury's presence." *Id.* (quoting *United States v. Beasley*, No. 3:20-CR-36-DPJ-LRA, 2020 WL 6438255, at *1 (S.D. Miss. Nov. 2, 2020)).

"In Mississippi, the success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert." *Conn v. United States*, 880 F. Supp. 2d 741, 742 (S.D. Miss 2012) (cleaned up). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case

Fed. R. Evid. 702.

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Piptone v. Biomatrix,*

4

*Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993)). "In short, expert testimony is admissible only if it is both relevant and reliable." *Id.* at 244.

In determining expert testimony reliability, the Court considers whether the content of the expert's testimony: "(1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Id.* (citing Daubert, 509 U.S. at 593–94). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation omitted).

> B. Motion in Limine to Strike and/or Exclude the Proposed Testimony of Dr. David Messerly [172]

Dr. Yamout first moves to strike or exclude the proposed testimony of Dr. David Messerly. [172]. Dr. Yamout is a hospitalist—a physician whose focus is the general medical care of hospitalized patients—and is certified in internal medicine. He contends that Dr. Messerly, an emergency medicine physician, is unqualified to testify about the duties of a hospitalist performing a rapid sequence intubation (RSI) in the ICU setting. [172] at 2.

In Mississippi, a plaintiff must present a medical expert to articulate an objective standard of care. *Conn*, 880 F. Supp. 2d at 742. Mississippi courts have articulated this standard of care as

5

> given the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat through maximum reasonable medical recovery, each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment[,] and options.

*Butler v. Chadwick Nursing and Rehab. Center*, 223 So. 3d 835, 841 (Miss. Ct. App. 2017) (quoting *Hall v. Hilbun*, 466 So. 2d 856, 873 (Miss. 1985).

Mississippi does not require a medical expert to be familiar with a specific subject, but rather with a specialty. *Hubbard v. Wansley*, 954 So.2d 951, 958 (Miss. 2007). But "[g]enerally, it is not required that an expert in a medical-malpractice case be of the same specialty as the doctor about whom the expert is testifying." *Est. of Ward v. Williams*, 333 So. 3d 44, 49 (Miss. Ct. App. 2021) (holding that a nephrologist may testify about the standard of care surrounding kidney care in an emergency medicine case) (quoting *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 181 (Miss. 2009)).

Mississippi courts have also held that "[if a] procedure is one that could be used in a specialized or a generalized practice . . . any licensed practitioner could testify that the defendants violated the standard of care, not as specialists, but as general practitioners." *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 719 (Miss. 1995). "A specialist may testify as to the standard of care that a general medical practitioner should follow when performing a recognized medical procedure." *Id. See also Brown v. Mladineo*, 504 So.2d 1201, 1203 (Miss. 1987) (holding that a general surgeon was qualified to testify about gynecological

6

surgery). For example, in *Estate of Sumrall v. Singing River Health Sys.*, the Mississippi Court of Appeals held that an anesthesiologist and internist could testify about the standard of care for removing central lines, a procedure completed by a nurse. 303 So. 3d 798, 806 (Miss. Ct. App. 2020). The court held that the doctor "demonstrated 'satisfactory familiarity' with the procedure required to remove a patient's central line." *Id.* The court also found important that "the record [was] without evidence showing that the standard of care for removing central lines differs between doctors and nurses." *Id.* Also of importance, the doctor there did not offer a standard of care different from the standard presented by the opposing side. *Id.*

The same is true here. Dr. Yamout presents no evidence to suggest that the standard of care for an RSI procedure differs between a hospitalist and a doctor practicing emergency medicine. He also cites to no case law to support his contention that only a doctor "board certified internal medicine physician who works as a Hospitalist caring for and intubating patients in an ICU setting" is qualified to offer an opinion on intubation. *See* [173] at 12. Nor does he offer a different standard of care from the one purported by the Plaintiffs. *See Estate of Sumrall*, 303 So. 3d at 806.

Additionally, Dr. Messerly has over 15 years of emergency medicine experience in a hospital setting. *See* Dr. Messerly CV [179-2] at 1. The record reflects that doctors of many specialties were familiar with the RSI procedure. *See* [181-1] at 15–19. Plaintiffs therefore provide sufficient evidence for the Court to

conclude that Dr. Messerly may testify about the standard of care required for an RSI in the hospital setting. Thus, Dr. Yamount's motion in limine [172] is denied.

C. Motion in Limine to Exclude Certain Testimony [174]

Dr. Yamout next moves to exclude both Dr. Messerly and Dr. Kyle Happel's expert opinions on proximate causation. He claims that their opinion—that a "delay" between the RSI and cricothyroidotomy proximately caused Ritchie's death—is "imprecise and vague and does not adequately quantify Mr. Ritchie's chance of recovery with or without the intervention of Dr. Yamout, especially in the face of his severe septic condition." [175] at 16. Dr. Yamout argues that to establish proximate causation, Plaintiffs must "supply evidence that proper treatment would have provided the patient with a greater than [50%] chance of a better result than was in fact obtained." *Ladner v. Campbell*, 515 So. 2d 882, 889 (Miss. 1987) (citation omitted).

Plaintiffs, however, characterize Ritchie's injury as "a direct case of oxygen deprivation caused by negligence, with the expected causal result—death." Mem. in Opp. [178]. at 2. According to Plaintiffs, this is not a "loss of chance" case like a "failure to diagnose" case. *Id*. at 2. Plaintiffs' experts conclude that Dr. Yamout's breach caused Ritchie's death, not hindered his recovery. *Id*. "Loss-of-chance-of-recovery theory instructions are generally submitted by plaintiffs in circumstances where a medical provider's negligence does not cause a patient's injury or death, but arguably hindered the patient from achieving reasonably probable and substantial recovery from injury." *Causey v. Saunders*, 998 So. 2d 393, 410 (Miss. 2008). In

*Causey v. Saunders*, Dr. Causey "was alleged to have caused the death of [the plaintiff] due to an overdose, not to have hindered [his] recovery. Therefore, the chance-of-recovery instruction [was] not applicable." *Id.*

"A qualified medical expert is permitted to extrapolate causation testimony from the patient's clinical picture although the medical records contain no objective medical evidence establishing causation." *Stuart v. St. Dominic-Jackson Mem. Hosp.*, 311 So. 3d 1192, 1206 (Miss. Ct. App. 2020) (cleaned up). Experts may offer causation theories if their opinions "constitute[] a scientifically grounded theory of causation, not the 'junk science' which the Daubert court sought to preclude from jury consideration." *Id.* at 1206 (citing *Hubbard*, 41 So. 3d at 678). "Only opinions formed by medical experts upon the basis of credible evidence in the case and which can be stated with reasonable medical certainty have probative value." *Cates v. Woods*, 169 So. 3d 902, 907 (Miss. Ct. App. 2014).

Here, the Plaintiffs provide evidence that Dr. Yamout's breach of the standard of care proximately caused Ritchie's death, rather than simply contributed to a loss of chance of recovery. During the intubation attempts, Ritchie coded for 18 minutes. [122-4] at 29. Both experts are of the opinion that Dr. Yamout's breach of the standard of care during this intubation led to Ritchie's anoxic injury, which ultimately led to Ritchie's death. Dr. Messerly Expert Report [170-2] at 7–8; Dr. Happel Expert Report [170-3] at 8.

The Court therefore finds that the Plaintiffs have presented permissible expert testimony relating to proximate causation. The Court therefore denies the motion.

III.   Motion for Partial Summary Judgment [170]

A.  Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). This party must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). In analyzing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson,* 477 U.S. at 249), but only determines whether there is a genuine issue for trial when

viewing the evidence in the light most favorable to the party opposing summary judgment. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

    B. Analysis

In their Amended Complaint [3], Plaintiffs allege that all the named Defendants had these duties to Ritchie:

a. A duty to use reasonable care in their provision of care and treatment to him;
b. A duty to order, undertake, and perform prompt and continuous diagnostic procedures, including a duty of properly monitor, ascertain, record, and report his material vital signs;
c. A duty to promptly order, undertake, perform, and evaluate tests, including any tests that might reveal Ritchie to have been in an emergent state;
d. A duty to provide skilled, competent, and properly trained physicians and nurses to render care and treatment to him;
e. A duty to properly and carefully prescribe and administer only necessary medications and drugs;
f. A duty to properly assess and initiate an adequate treatment and monitoring plan for him;
g. A duty to properly and promptly initiate necessary, proper and curative medical procedures and a duty to properly and promptly perform any and all medical procedures undertaken and/or ordered;
h. A duty to prevent harm to him caused or occasioned by administrations of medications, including, but not limited to, fluids and paralytics, and/or respiratory depressants, and/or other such medications;
i. A duty to promptly intervene and provide substantive and curative medical care to treat him and prevent a worsening of his condition and the foreseeable harm that occurred, and;
j. Such other duties and obligations which may be shown at trial of this matter.

[3] at 6–7. Dr. Yamout moves for partial summary judgment, asserting that "several of [these] allegations . . . are no longer relevant and should be dismissed" because the Plaintiffs have not designated an expert witness that will opine of these specific allegations against Dr. Yamout. Mot. for Summ. J. [170] at 2. Dr. Yamout

11

specifically seeks to dismiss subparagraphs b, c, d, e, h, i, and j entirely, and subparagraphs f and g partially. *Id.*

In Mississippi, a prima facie case for medical malpractice consists of these elements: "(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant." *Hubbard v. Wansley*, 954 So. 2d 951, 956–57 (Miss. 2007). "When proving these elements in a medical malpractice suit, expert testimony must be used." *Id.* at 57 (citation omitted). "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id.*

Dr. Messerly contends Dr. Yamout breached the standard of care because he "did not know of, or employ in the pre-intubation assessment of Ritchie, appropriate bedside assessment techniques in an effort to determine whether Ritchie would be difficult to intubate or ventilate during the intubation attempts." [155-2] at 3. He also contends that Dr. Yamout breached the applicable standard of care by failing to formulate a rescue plan, failing to adopt an appropriate intubation plan for Ritchie, failing to have all equipment needed present and readily available, and failing to have necessary personnel present. *Id.* at 6. Dr. Happel contends that Dr. Yamout breached the standard of care by not conducting an airway assessment before performing RSI and not preparing for Ritchie's failed airway. [155-3] at 3. Both

12

experts contend that the breaches of the standard of care were the proximate cause of Ritchie's death. [155-2] at 8; [155-3] at 6–8.

In the light most favorable to the Plaintiffs, the Court construes the experts as identifying potential duties listed in the challenged subparagraphs. Subparagraphs a–j contain broad language that could be addressed by the experts in their articulation in the appropriate standard of care required by Dr. Yamout. The Motion for Partial Summary Judgment therefore is denied.

IV.     Conclusion

For reasons stated, the Court DENIES Dr. Yamout's Motions in Limine [172], [174] and DENIES Dr. Yamout's Motion for Partial Summary Judgment [170].

SO ORDERED this the 5th day of April, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
